# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLEEN SANGUINETTI, as an individual and personal representative of the ESTATE OF MARY E. PERRIN, SHARON BETTENCOURT, as an individual and successor in interest to the ESTATE OF MARY E. PERRIN, STEVE PACHEO, as an individual and successor in interest to the ESTATE OF MARY E. PERRIN,<br><br>Plaintiff,<br><br>v.<br><br>AVALON HEALTH CARE, INC. dba AVALON OF CALIFORNIA, LLC; AVALON CARE CENTER - MERCED FRANCISCAN, LLC, dba Franciscan Convalescent Hospital; 3169 M STREET, LLC, LISA CHAPPELOW, CYNTHIA SELMO, DOES 1-100,<br><br>Defendants. | 1:12 - CV - 0038 AWI SKO<br><br>MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS<br><br>Doc. # 5 |

   This is an action for damages pursuant to 42 U.S.C. § 1983 by plaintiffs Colleen Sanguinetti, individually and as personal representative of the estate of Mary E. Perrin ("Decedent"), and Sharon Bettencourt and Steve Pacheo as individuals and as successors in interest to the estate of Decendent (collectively, "Plaintiffs") against Avalon Health Care, Inc., dba Avalon Care Center - Merced Franciscan, dba Franciscan Convalescent Hospital, and

individuals Lisa Chappelow and Cynthia Selmo (collectively, "Defendants"). The action arises out of the injury and eventual death of Decedent while a resident at Franciscan Convalescent Hospital ("Franciscan"). Plaintiff's first claim for relief alleges "wrongful death" pursuant to 42 U.S.C. § 1983 and the second claim for relief alleges a claim for "survival" on behalf of the Plaintiffs in their individual capacities also pursuant to section 1983. The remaining claims for relief allege negligence, breach of contract, wilful misconduct, constructive fraud, elder abuse and unfair business practices, each under California law.

## FACTUAL BACKGROUND

The central event giving rise to this action was a fall and related injury sustained by Decedent as she was being transferred from her bed to a chair by an employee using a type of mechanical lift. Plaintiff alleges the fall and injury occurred because the staffing available at the time was insufficient to accomplish the transfer to the chair with two persons instead of by the single employee who attempted the transfer. Plaintiffs allege essentially that the non-availability of qualified employees to manage such needs as patient bed-to-chair transfers is a systemic problem caused by Defendants' failure to devote sufficient resources to meet quality-of-care standards imposed by various federal statutes, principally Medicare, Medicaid, the Omnibus Budget Reconciliation Act of 1987 ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA"). Decedent was not able to recover from the injury she sustained as a result of the fall and ultimately died from complications that were traceable in part to the pain caused by the injury.

Plaintiffs' first claim for relief alleges that state and federal governmental rules substantially regulate Defendants' conduct and lists a number of specific regulations that were allegedly transgressed when a single employee attempted to transfer Decedent from bed to chair resulting in her injury. Some additional information is appended to the complaint including a copy of Decedent's Death Certificate, copies of what appear to be photographs and several pages that are copies of summaries of findings by California State Health Department investigations

and responses of Defendants to deficiencies found in those investigations.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly"). While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature. See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

**DISCUSSION**

The court's jurisdiction in this action is predicated on the existence of federal subject matter jurisdiction. The only claims invoking federal subject matter are Plaintiffs' first and second claims for relief, which are alleged pursuant to 42 U.S.C. § 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[. . . .]

It is well settled that section 1983 confers no rights in itself but is only a means of vindicating rights otherwise secured by the Constitution or laws of the United States. Chapman v. Huston Welfare Rights Organization, 441 U.S. 600, 617-618 (1979). Although section 1983 may be invoked to secure a right created by a federal statute, as well as one created by the Constitution, Maine v. Thiboutot, 448 U.S. 1, 4 (1980), not all federal statutory enactments create private rights that are enforceable under section 1983. In particular, enactments of Congress under the spending power of the United States typically do not confer individual rights that can be enforced under section 1983. Gonzaga University v. Doe, 536 U.S. 273, 280 (2002). "Unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." Id. (quoting Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17 (1981)).

The court notes that Plaintiffs' complaint is replete with allegations attempting to show that the individuals and entities named as Defendants were operating "under color of law" for purposes of section 1983. Similarly, Defendants motion to dismiss addresses the various doctrines under which state action may be inferred and argues none of these doctrines apply. However, as to the more fundamental question of whether any of the federal statutes cited in the complaint confer individual rights that can be vindicated under section 1983, the complaint merely makes the conclusory assertion that "[t]he specific detailed regulatory provisions as well

as the statutes in question create rights which are enforceable by the Plaintiffs pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights." Doc. # 1 at ¶ 79.  The court disagrees.

As an initial matter, the court notes that Plaintiffs' statement quoted above is merely a legal conclusion dressed as fact and fails to adequately identify the nature and source of the right that is alleged to have been abridged.  The court is aware that Defendants have followed Plaintiffs' lead and have focused their arguments on the "state action" component of Plaintiffs' 1983 claim rather than on the federally guaranteed right component.  From the court's perspective, the parties appear to have passed over the issue of primary concern – whether Plaintiffs' first or second claims for relief implicate any rights established under federal law.  See Ball v. Rodgers, 492 F.3d 1094, 1103 (9th Cir. 2007) (whether particular Medicaid Act's provisions conferred individual rights is "predicate question").  The court finds however that Plaintiffs complaint does identify at least the federal statutory provisions that are alleged to have been violated.  The legal framework for the analysis of the central question – whether the statutes that were allegedly violated secure private rights that may be vindicated pursuant to section 1983 – is well established and the court finds that the analysis can be undertaken without further pleading of the parties.

To the extent Plaintiff's complaint invokes federal rights, those rights are to be found in statutes cited by Plaintiffs – in this case either 42 U.S.C. §§ 1395i-3 or 1396r.  Section 1395i-3 is the portion of the Medicare statutory scheme that sets out the general patient care requirements for skilled nursing facilities (nursing homes) providing care for Medicare recipients.  Section 1395i-3 is the codification of the Federal Nursing Homes Reform Amendments ("FNHRA") that were included in the Omnibus Budget Reconciliation Act of 1987.  Section 1396r is the portion of Medicaid regulations that deals with the same subject and uses language that is essentially identical to the corresponding portion of section 1395i-3.  Plaintiffs do not contend, and the court cannot determine, that sections 13951-3 and 1396r are different in any way that would be of

significance to this decision.  Therefore, in the discussion that follows the court intends that any feature or provision of section 1395i-3 (or FNHRA) is also expressed in section 1396r and any conclusions drawn with regard to the former apply with equal force to the latter.  The Medicare and Medicaid programs were enacted pursuant to Congress's spending power.  See Sanchez v. Johnson, 416, 1057 n.4 (9th Cir. 2005).

In Blessing v. Freestone, 520 U.S. 329 (1997), the Supreme Court developed a three-factor test to determine whether a statute promulgated under the spending power of the United States confers a right that is enforceable under section 1983.  Those factors are: (1) "Congress must have intended that the provision benefitted the plaintiff;" (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence;" (3) and "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms."  Id. at 340 - 341.  The Supreme Court substantially clarified the first factor of the three-factor test in Gonzaga, when it held:

> We reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983.  Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Accordingly, it is *rights*, not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section.

Gonzaga, 536 U.S. at 283.

**I. Congressional Intent to Create a Private Right**

The first of the factors listed in Blessing requires that the court determine "whether or not Congress intended to confer individual rights upon a class of beneficiaries."  Gonzaga, 536 U.S. at 285.  "Under Gonzaga, evidence of [a congressional intent to establish a private right] can be found in a statute's language as well as its overarching structure."  Ball, 492 F.3d at 1105 (citing Gonzaga for its holding that "'where the text and structure of the statute provide no indication that Congress intends to create new individual rights, there is no basis fore a private suit'").  The congressional intent to create private rights may be evident where the text conferring the right is

6

"'phrased in terms of the persons being benefitted.' [Citation.]" Gonzaga, 536 U.S. at 284 (quoting Cannon v. University of Chicago, 441 U.S. 560, 692 n.13 (1979)). The focus of the provision of the provision should be "on individual entitlement to benefits rather than the aggregate or systemwide policies and practices of a regulated entity." Price v. City of Stockton, 390 F.3d 1105, 1110 (9th Cir. 2004).

While Medicare and Medicaid are programs implemented under the spending power of Congress, certain provisions have been interpreted as individual right-granting while others have not. *Compare* Ball, 492 F.3d at 1103 (finding individual rights under Medicaid free-choice provisions, 42 U.S.C. §§ 1396n(c)2(C) and (d)(2)(C)), *with* Sanchez, 416 F.3d at 1060 (concluding Congress did not intend private right of action by recipients of Medicaid funds where pay levels were not sufficiently competitive to provide quality care for beneficiaries under 42 U.S.C. § 1396a(a)(30)(A)). Plaintiffs complaint alleges violation of 42 U.S.C. §§ 1395i-3(b)(1)(A) and 1396r(b)(1)(A). Both provisions state, in their entirety:

> A skilled nursing facility must care for its residents in such a manner and such an environment as will promote maintenance or enhancement of the quality of life for each resident.

So far as the court is aware, the Ninth Circuit has not spoken directly to the question of whether any portion of subdivision (b) of either statute provides an individual right that can be vindicated under section 1983. The District Court for the District of Colorado confronted this question directly in Hawkins v. County of Brent, 800 F.Supp.2d 1162 (D. Colo. 2011). In Hawkins, as here, a resident of a nursing home receiving Medicare funds suffered an adverse outcome of treatment and sued in federal court for violation of quality-of-care provisions of FEHRA in violation of section 1983. Id. at 1164. The Hawkins court analyzed the language of FNHRA in light of Gonzaga and came to the conclusion that the quality-of-care provisions of FNHRA do not provide any individual rights. See id. at 1166-1167. In its analysis the Hawkins court recognized that the Third Circuit Court of Appeals had address a similar case and come to the opposite conclusion. See id. at 1167 (noting holding in Grammar v. John J. Kane Regional

7

Centers – Glen Hazel, 570 F.3d 520, 529 (3rd Cir. 2009) that FNHRA "is replete with rights-creating language" and disagreeing with same). Two considerations lead this court to agree with the Hawkins court's finding that nothing in FNHRA's plain language indicates a congressional intent to confer private rights in quality of care and to concur in its criticism of Grammar.

    First, the language of subsection (b)(1)(A) upon which Plaintiff relies directly, is exactly the sort of broad " aggregate or systemwide" policy and practice statement that the Price court held does not indicate an intent to create a private right. The *subject* of subsection (b)(1)(A), as indeed is true of subsections (b)(1), (b)(2) and (b)(3), is the nursing home, not the resident. These subsections begin with the phrase "A skilled nursing facility must . . . ." In short, "the FNHRA provisions focus on what [skilled nursing] facilities must do to maintain funding, not on the benefits received by the residents." Hawkins, 800 F.Supp.2d at 1167. While it is certainly anticipated that the residents of skilled nursing facilities would benefit from the establishment of, for example, quality assurance committees (§ (b)(1)(B)), written plans of care (§ (b)(2)), and standardized comprehensive assessments of functional capacity (§ (b)(3)(A)), those requirements are intended to direct the efforts of the facilities and provide categories of expectations that can be regularly assessed by oversight agencies. Nothing in the language of any of these provisions unambiguously indicates the intent of Congress to confer a right on patients that can be vindicated by way section 1983.

    Second, the overarching structure of FNHRA and its Medicaid counterpart indicate that Congress had a specific intent to allocate individual rights *other than* rights to causes of action arising from lapses in quality of care. Subsection 1135i-3(c)(1) specifies rights that belong to patients to include, *inter alia*, right to accommodation of needs, right of grievance, right of participation in activities, and rights with regard to information. Among all the rights specifically granted to individual residents, none convey a right to be free from the possibility of negative outcomes of procedures or the right to sue when a negative outcome is experienced. What the structure of the FNHRA indicates is that Congress was acutely aware of its ability to

create or withhold individual rights through Medical and Medicaid authorizing and funding legislation and chose very carefully which rights would be conferred on individual patients and which would not.  In light of this overarching structure, the fact that Plaintiffs cannot point with specificity to any provision that clearly establishes the right Plaintiffs claim was abridged argues strongly that it was not the intent of Congress to establish such a right.

Because there is no language that establishes the rights Plaintiffs claim were violated, Plaintiffs claim for relief also fails the third of the Blessing requirements that such rights be stated in mandatory, rather than precatory, terms.

**II. Vague and Amorphous "Right" not Established**

What is painfully obvious about this action is that it is a completely garden variety medical malpractice action dressed in the clothes of rights violation.  This raises a number of questions that cannot be directly answered.  First and foremost, what precisely is the right and what constitutes a violation of it?  Does Medicare or Medicaid guarantee a right against adverse outcome?  Against procedural error?  If there is a procedural error, is a right violated in the absence of an adverse outcome or must an injury result?  The only possible answer to these imponderables is an implied contention that there is a federal "right" against malpractice whenever it occurs in an institution that receives Medicare or Medicaid funding.  This is obviously not the case and the implied suggestion that simple malpractice should be a federal case boarders on specious.

Tellingly, Plaintiffs' first claim for relief is captioned "Wrongful Death."  There is no federal wrongful death statute and there is no language in either the Medical or Medicaid statutes that could be interpreted as establishing one.  While "wrongful death" is sometimes used in the context of section 1983 as a short-hand to describe an action for excessive use of force by police, such an action is rooted in the Fourth Amendment right against unreasonable search or seizure – a right not applicable to this context.  The label "wrongful death" is meaningless as a right unless it is used in reference to a right established under the Constitution or under statutory law.

Neither of those conditions apply here.

The court concludes that Plaintiffs' first claim for relief for wrongful death is fatally flawed because Plaintiffs have failed to identify any federal right that was violated. Plaintiffs' second claim for relief is similarly flawed. Again, there is no federal common-law claim for survivorship. To the extent such claims can be asserted in other contexts they are rooted in the Fourteenth Amendment right to familial companionship. Such a claim can only be asserted where the actions complained of were taken "with deliberate indifference or in reckless disregard" of the rights of the decedent. See Smoot v. City of Placentia, 950 F.Supp. 282, 283-284 (C.D. Cal. 1997) (citing Lewis v. Sacramento County, 98 F.3d 434, 441 (9th Cir. 1996). Here, because there is no right belonging to the Decedent that can be said to have been violated, whether recklessly or otherwise, there can be no Fourteenth Amendment violation of Decedent's survivors' rights.

The court finds Plaintiffs' first and second claims for relief fail to state a claim upon which relief can be granted. Because the court's finding is based on the lack of any individual federal right asserted in Plaintiffs' complaint that would support an action pursuant to section 1983, the court need not address the parties' contentions with regard to action under color of law. The court further finds that further pleading cannot correct the deficiency in Plaintiffs' first and second claims for relief. Leave to further amend will therefore not be granted.

"[Supplemental] jurisdiction is a doctrine of discretion not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to the litigants; if these are not present, a federal court should hesitate to exercise jurisdiction over state claims." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). The court may decline to exercise supplemental jurisdiction over state claims when the federal claims are dismissed before trial. See 28 U.S.C. § 1367(c)(3); Gibbs, 383 U.S. at 726. In Nishimoto v. Federman-Bachrach & Associates, 903 F.2d 709, 715 (9th Cir.1990), the Ninth Circuit made clear that once no federal claims remain in a given case, it is within the discretion of the district court to determine whether

to dismiss the remaining claims. See also 28 USC § 1367. The district court should "consider and weigh in each case the values of judicial economy, convenience, fairness, and comity." Id.

As the court has previously suggested, this action is a transparent effort to shoe-horn a malpractice action into federal court where it does not belong. Considerations of comity, if not convenience to the parties and judicial efficiency, require that this court decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. This actions will therefore be dismissed in its entirety.

THEREFORE, pursuant to the foregoing discussion, it is hereby ORDERED that Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is hereby GRANTED. Plaintiffs' first and second claims for relief are hereby DISMISSED with prejudice. Plaintiffs' remaining state law claims for relief are hereby DISMISSED without prejudice. The Clerk of the Court shall CLOSE the CASE.

IT IS SO ORDERED.

Dated: June 26, 2012

CHIEF UNITED STATES DISTRICT JUDGE

11